UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE ALLEN HURICK,

        Plaintiff,

Case No. 1:13-cv-61

Hon. Gordon J. Quist

v.

MARY K. BERGHUIS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion for summary judgment filed by the three remaining defendants James Verboncouer, Dawn Boisvert and Geraldine Harris (docket no. 27).

**I.    Plaintiff's complaint**

Plaintiff, Dale Allen Hurick, is incarcerated by the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff filed this action in the Eastern District of Michigan on December 6, 2012.[1] His action was transferred to this district on January 18, 2013. *See* Case Transfer (docket no. 5). Plaintiff subsequently amended the complaint on March 7, 2013. *See* Amend. Compl. (docket no. 12). In his initial complaint plaintiff named the following current or former employees of LRF as defendants: Warden Mary K. Berghuis;

---

[1] Plaintiff's complaint was date stamped and docketed as filed on December 12, 2012. *See* Compl. (docket no. 1). However, under the "prison mailbox rule," the Court considers plaintiff's complaint as filed on December 6, 2012, the date on which he signed it. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) ("Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint.") (internal citations omitted).

Deputy Warden James D. Verboncouer; Grievance Coordinator James Minnerick; Corrections Officer/Substitute Grievance Coordinator M. Baily; Assistant Resident Unit Supervisor (ARUS) James Jones; and Mailroom Representative/Supervisor D. Boisvert. The Court allowed plaintiff to amend the complaint to include an additional defendant, LRF Librarian Harris. Given that the amended complaint was effectively a supplement to the original complaint, the Court construed both the original complaint and the amended complaint as the "amended" complaint in this action. Opinion at p. 2 (docket no. 20)

The Court summarized the allegations of plaintiff's amended complaint as follows:

In his complaint, Plaintiff alleges that Mailroom Representative Boisvert "initiated the 'obstruction of justice' by illegally [and] unlawfully rejecting [Plaintiff's] 6.500 motion when mailed in on 5-22-12." (Compl., docket #1, Page ID#5.) Plaintiff asserts that Defendants Berghuis, Verboncouer, Jones, Minnerick, and Baily "have the authority to cure, and had the authority to cure" the foregoing conduct, but they did not do so. (*Id.*, Page ID##5, 7.)

Plaintiff also complains that prison officials have retaliated against him for filing the instant action. Since he initially filed this action on December 12, 2012, Defendants Harris and Verboncouer have continually prevented him from receiving a "familiar accommodation" to his callout schedule, which allowed him to use the law library from 12:45 p.m. to 2:15 p.m. on weekdays. (*Id.*) Plaintiff is assigned to a work detail from 2:30 pm to 9:30 pm, Monday through Friday, and his visitation hours are on weekends. Without the accommodation to his schedule, Plaintiff must give up his work hours or his visitation time in order to use the law library. Plaintiff contends that Warden Berghuis has allowed the actions by Harris and Verboncouer.

In addition, on December 18, 2012, Officer Bertram (who is not a Defendant in this action), searched Plaintiff's cell and confiscated legal property belonging to another inmate. On December 23, 2012, Boisvert destroyed Plaintiff's "personal property and private privileged document(s) (plaintiff's 6.500 Motion)." (Am. Compl., docket #12, Page ID#43.) On January 12 and 31, 2013, MDOC officers who are not Defendants in this action wrote "frivolous" misconduct tickets on Plaintiff. (*Id.*, Page ID#44.) On January 28, 2013, the LRF business office "misappropriated" funds from his account. (*Id.*).

Based on the foregoing, Plaintiff claims that Defendants' actions constituted a violation of the following: Plaintiff's rights under the First, Fourth, Fifth, Sixth,

2

> Eighth, and Fourteenth Amendments to the United States Constitution; federal law (specifically, 18 U.S.C. §§ 241, 242, 1505, 1512, 1702, 2071); state law; and MDOC policies.
>
> As relief, Plaintiff seeks an injunction to enforce his rights, damages, and reimbursement of his costs in bringing this action.

Id. at pp. 6-7 (footnote omitted).

Upon initial screening of the complaint as required under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court determined that plaintiff failed to state a claim against defendants Berghuis, Jones, Baily and Minnerick because these four defendants were supervisory employees who had no personal involvement in the May 22, 2012 mailroom incident and plaintiff could not hold them liable under a theory of respondeat superior or vicarious liability. *Id.* at pp. 9-11. The Court dismissed these defendants for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). *Id.* at p. 11. The Court allowed service of the amended complaint on defendants Boisvert, Harris and Verboncouer. *Id.*

### II. Plaintiff's respondeat superior claim against Deputy Warden Verboncouer

One of plaintiff's claims against Deputy Warden Verboncouer is that he failed to "cure" defendant Boisvert's alleged illegal rejection of his mail on May 22, 2012. This is the same respondeat superior claim that plaintiff alleged against former defendants Berghuis, Jones, Baily and Minnerick. As the Assistant Deputy Warden at LRF, with no personal involvement in the May 22, 2012 incident, plaintiff's claim against defendant Verboncouer should be dismissed for the same

reasons as defendants Berghuis, Jones, Baily and Minnerick. *See Opinion* at pp. 9-11; 28 U.S.C. §§ 1915(e)(2)(B)(ii)[2] and 42 U.S.C. § 1997e(c)(1)[3].

### III. Defendant's motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 3 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] 28 U.S.C. § 1915(e)(2)(B)(ii) provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be granted[.]"

[3] 42 U.S.C. § 1997e(c)(1) provides that "[t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."

4

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

5

has the potential to reduce the number of inmate suits, and also to improve the
quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not

receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust various claims

Defendants point out that plaintiff filed only two Step III grievance appeals while incarcerated at LRF, those being LRF-11-12-2087-01d ("2087") and grievance LRF 12-06-0813-07a ("813"). *See* MDOC Step III Grievance Report (docket no. 28-3).

#### a. Grievance 2087

Defendants state that Grievance 2087 "was completed/resolved" after plaintiff filed his original complaint and that "[b]ecause Hurick did not complete MDOC's grievance process prior to filing this litigation, this grievance does not exhaust any of Hurick's Amended Complaint allegations." Defendants' Brief at pp. 6-7. Defendants, however, did not submit evidence to support this contention, i.e., they did not file a copy of Grievance 2087, address the claims raised in this grievance or explain how this grievance relates to the present lawsuit. Accordingly, defendants' claim for lack of exhaustion with respect to Grievance 2087 should be denied.

#### b. Grievance 813

In Grievance 813, plaintiff complained that on May 22, 2012, "[t]his facility held up my mail/legal work (6.500 motion) in violation of my rights," that "[t]his facility refers to an irrelevant policy to argue their claim against me," and that such action "is hindering me from my access to the courts". *See* Grievance 813 (docket no. 28-4). Plaintiff stated that he had a hearing on the situation on May 31, 2012 or June 1, 2012. *Id.* Plaintiff did not name anyone in the grievance, which he filed on June 3, 2012. *Id.* The grievance was denied on or about June 15, 2012.

7

*Id.* In denying the grievance, MDOC staff identified the person who rejected the mail as defendant Boisvert:

> You received a Notice of Package/Mail Rejection on 5/22/12 written by D. Boisvert stating Mail which is a threat to the security of the facility because of its volume the [sic] mail cannot be adequately searched and should be rejected per memo dated May 15, 2008 from N. Killough. The mail in question was 2 inches thick.
>
> You received an Administrative Hearing on 5/31/12 by Arus Jones with a disposition stating the mail cannot be adequately searched due to its volume and is prohibited pursuant to PD 05.03.118, Prisoner Mail paragraph MM. It also mentions the memo from N. Killough from May 15, 2008.

Step I response (docket no. 28-4). Plaintiff's appeals at Step II and Step III were denied. *Id.* The record reflects that plaintiff exhausted this grievance on November 28, 2012. *Id.*

Defendants contend that while this grievance exhausted plaintiff's claim that defendant Boisvert improperly rejected a mailroom package, it did not exhaust plaintiff's claim that on December 23, 2012, defendant Boisvert destroyed his MCR 6.500 motion. As defendants point out, exhaustion of this claim is "factually impossible" since Grievance 813 was resolved nearly one month *before* the alleged destruction of plaintiff's motion.

In addition, plaintiff could not have exhausted this claim which arose *after* he filed this action on December 6, 2012. The PLRA provides that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. Thus, a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999).

8

Plaintiff has failed to properly exhaust a grievance against defendant Boisvert for destroying his MCR 6.500 motion on December 23, 2012. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645. Accordingly, defendant Boisvert's motion for summary judgment should be granted as to this claim.

### 4. **Plaintiff did not properly exhaust his claims against defendants Harris and Verboncouer for alleged retaliatory acts that occurred after he filed this lawsuit**

Defendants contend that plaintiff did not properly exhaust "most" of his amended complaint because he did not exhaust a grievance regarding the conduct alleged in the amended complaint prior to filing this lawsuit. In this regard, all of plaintiff's claims which arose from acts committed after he filed this lawsuit, including plaintiff's allegations that defendants Harris and Verboncouer retaliated against him after December 12, 2012, should be dismissed for lack of proper exhaustion.

In response to defendants' motion, plaintiff submitted copies of grievances which he claims were filed against defendants Harris and Verboncouer on November 29, 2012 for acts of retaliation which occurred on November 26, 2012. It is unclear as to whether plaintiff actually filed these grievances, because neither grievance is numbered or marked as received by the MDOC. *See* Grievances (docket no. 30-1 at pp. 38 and 42). Nevertheless, even if plaintiff did in fact file such grievances, these grievances are irrelevant to the scope of the present lawsuit, which is limited to alleged retaliation by Harris and Verboncouer that occurred on and after December 12, 2012. Accordingly, defendants Harris and Verboncouer are entitled to summary judgment for lack of proper exhaustion with respect to these claims. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Freeman*, 196 F.3d at 645.

### C. Plaintiff's First Amendment claims against defendant Boisvert

#### 1. Interference with incoming mail

Plaintiff alleged that defendant Boisvert illegally rejected his mail on May 22, 2012. While plaintiff alleged that defendants violated rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, he does not articulate any particular constitutional violation by Ms. Boisvert. Reading plaintiff's amended complaint broadly, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court views his mail rejection claims as brought under the First Amendment, specifically that the MDOC's mail policy, as defendant Boisvert applied it to him, violated the First Amendment.

It is well established that "[a] prisoner's right to receive mail is protected by the First Amendment." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir.2003). However, this right "is subject to prison policies and regulations that are reasonably related to legitimate penological interests, such as security, good order, or discipline of the institution." *Harbin–Bey v. Rutter*, 420 F.3d 571, 578, quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987) and *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (internal quotation marks and citations omitted).

As a preliminary matter, defendants assert that plaintiff's amended complaint "does not state whether he considers the rejected package legal mail or not." Defendants' Brief at p. 8. The Court disagrees with defendants' characterization of plaintiff's claim. The Court previously determined that plaintiff's amended complaint included the allegations and defendants as listed in both the original complaint and the amended complaint. *See* Opinion at p. 2. In the original complaint, plaintiff stated that the rejected mail was a "6.500 motion." Plaintiff is referring to a post-judgment motion brought pursuant to MCR 6.500 *et seq.* which criminal defendants in

10

Michigan file to collaterally attack their conviction. For purposes of this lawsuit, it is fair to say that plaintiff considered this motion to be "legal mail." However, while plaintiff's MCR 6.500 motion is a legal document, it is not necessarily defined as "legal mail" under the MDOC's policies.

MDOC Policy Directive 05.03.118 ¶ HH defines "legal mail" as follows:

> A prisoner may have his/her incoming legal mail receive special handling as set forth in Paragraph II by submitting a written request to the institution's mailroom Supervisor, of Residential Reentry Program facility Supervisor or designee, as appropriate. Only mail from an attorney or law firm, a legitimate legal service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the cort, or a Friend of the Court office shall receive this special handling, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

MDOC Policy Directive 05.03.118 ¶ HH.

If a prisoner has requested "special handling of legal mail" pursuant to ¶ HH, then the prisoner is entitled to be present when the mail is inspected for contraband:

> Incoming legal mail . . . shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence. The content of the mail shall not be read or skimmed. All physical contraband shall be confiscated prior to delivery to the prisoner. In CFA, written documentation shall be maintained regarding the delivery of legal mail to prisoners who have requested special handling of the mail. The documentation shall include the date the mail was received in the mailroom, the sender's name, the prisoner's name and number, the date the mail was given to the prisoner, and the prisoner's signature acknowledging receipt of the mail. If the prisoner chooses not to sign or accept the mail, that shall be documented and the mail delivered to the prisoner.

MDOC Policy Directive 05.03.118 ¶ II.

MDOC Policy Directive 05.03.118 ¶ MM prohibits incoming mail which may pose a threat to the correctional facility:

> Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal

11

activity, or may interfere with the rehabilitation of the prisoner. The following poses such risks under all circumstances and therefore shall be rejected. . . [List omitted.]

MDOC Policy Directive 05.03.118 ¶ MM.

Finally, MDOC Policy Directive 05.03.118 ¶ BB allows the MDOC to discard mail that cannot be searched:

> If mail is received in an envelope that is padded, corrugated, or *otherwise cannot be effectively searched*, the envelope may be discarded after a copy of the envelope is made showing the name and address of the sender and postmark. The copy shall be delivered to the prisoner instead of the original envelope, along with an explanation of why the copy was provided.

MDOC Policy Directive 05.03.118 ¶ BB.

In her affidavit, defendant Boisvert described the May 22, 2012 incident as follows. At all times relevant to this action, Boisvert was employed by the MDOC as a general office assistant and assigned to the mailroom at LRF, where she was responsible for processing all incoming and outgoing mail via the United States Post Office. Boisvert Aff. at ¶¶ 2 and 4 (docket no. 28-6). In describing her duties, Boisvert stated that "I search through the mail and pull out or sort all mail which MDOC policy defines as legal mail on a daily basis and record that mail on sheets for prisoners that have requested special handling of their legal mail." *Id.* at ¶ 6. Boisvert provided a copy of the envelope at issue, and states that "it is clear from the envelope that the mail item did not qualify as legal mail under MDOC's policy." *Id.* at ¶ 8. Both plaintiff and defendants have submitted copies of the envelope at issue. *See* envelope (docket no. 28-6 at p. 19) (defendants' submission); (docket no. 30-1 at p. 27) (plaintiff's submission). Boisvert explained why the envelope was not considered legal mail:

> Since the return address on the mailing envelope did not indicate that it was from a court or other legal organization, the item did not meet the guidelines of legal mail as defined in MDOC policy. In addition, there was no reference on the envelope

12

> suggesting it was legal mail. The item was not treated as legal mail nor was the item logged as legal mail.

Boisvert Aff. at ¶ 9.

Boisvert explained her reasons for rejecting the envelope as follows:

> Based on the volume of mail received at LRF and due to the volume of the material inside the envelope, the item could not been effectively searched within a reasonable amount [sic] and therefore posed a threat to the security of the correctional facility.

*Id.* at ¶ 10.

On May 22, 2012, Boisvert issued plaintiff a "Notice of Package/Mail Rejection." *Id.* at ¶ 11; *See* Notice of package/mail rejection (docket no. 28-6 at p. 20). The Notice stated that mail contained separate pages measuring almost two inches thick, that the envelope contained only a partial return address and did not identify who mailed it to plaintiff, and that the mail was a threat to the security of the facility under MDOC Policy Directive 05.03.118 "because of its volume the mail cannot be adequately searched and should be rejected . . . per memo dated May 15, 2008." Notice of Package/Mail Rejection.

Plaintiff requested an administrative hearing to determine whether the package was properly rejected. Boisvert Aff. at ¶ 11; Notice of package/mail rejection (docket no. 28-6 at p. 20). As reflected in the May 31, 2012 Administrative Hearing Report, the package rejection was upheld and plaintiff was advised that the package must be sent out of the facility at his own expense. Boisvert Aff. at ¶ 12. Specifically, the hearing officer found that:

> The mail cannot be adequately searched due to its volume. It is prohibited pursuant to PD 05.03.118 "Prisoner Mail," paragraph MM, "mail that may pose a threat to the security, good order, or discipline of the facility." It is also prohibited pursuant to a May 15, 2008 memo that refers to the volume of mail that is to be searched by mailroom staff.

Administrative Hearing Report (May 31, 2012) (docket no. 28-6 at p. 21). In addition, plaintiff was informed that if he failed to send out the package, it would be considered abandoned property and disposed of in accordance with MDOC policy. Boisvert Aff. at ¶ 12; Administrative Hearing Report.

Boisvert sent plaintiff a "Disposition of Rejected Mail" form advising him that he failed to provide the mailroom with a response to the package rejection. Boisvert Aff. at ¶ 13; Disposition of rejected mail (June 28, 2012) (docket no. 28-6 at p. 22). Plaintiff responded via kite, stating that he wanted the package sent to his home. Boisvert Aff. at ¶ 14; Kite (undated) (docket no. 28-6 at p. 23). According to Boisvert, "I then explained to [plaintiff] that if he hadn't filed a grievance regarding this issue, he would need to complete the Notice of Package/Mail Rejection and the Administrative Hearing Report, indicating that he wanted the package sent home at his own expense. Boisvert Aff. at ¶ 14; Disposition of rejected mail. Boisvert stated that plaintiff never provided her with the completed forms; rather he sent her two kites requesting that his package not be disposed of in accordance with MDOC policy. Boisvert Aff. at ¶ 15; Kites (July 1, 2012) (docket no. 28-6 at pp. 24-25).

Boisvert further explained:

On October 25, 2012, after not hearing anything further from [plaintiff] for three months. I sent another Notice of Package/Mail Rejection to [plaintiff]. ARUS Fritz returned the form to me noting on it that [plaintiff] failed to comply with my request.

Boisvert Aff. at ¶ 16. Based on Ms. Boisvert's affidavit, Policy Directive 05.03.118, and the evidence presented by defendants, it appears to the Court that Boisvert followed the MDOC policies with respect to rejecting plaintiff's mail on May 22, 2012 and that her actions were affirmed by a hearing officer on May 31, 2012.

Plaintiff submitted an affidavit opposing the motion in which he stated in pertinent part: (1) that the envelope rejected on May 22, 2012 contained "materials of a legal nature"; (2) that these materials did not violate any MDOC Policy, state law or federal law; (3) that the "volume" of the package does not constitute a violation; and (4) that at the administrative hearing held on May 31, 2012 he informed ARUS Jones that Ms. Boisvert was "quoting irrelevant policies" and an "outdated memo that was never officially promulgated as an authority." Hurick Aff. (docket no. 30-1 at pp. 62-65).

Viewing these facts in the light most favorable to plaintiff, his First Amendment claims fail. While plaintiff asserts that the envelope contained legal materials, the record reflects that the envelope at issue did not meet the definition of "legal mail" under MDOC Policy Directive 05.03.118 ¶ HH. Plaintiff's other contention, that defendant Boisvert illegally rejected his mail due to the volume of the package, is without merit. Pursuant to MDOC Policy Directive 05.03.118 ¶ BB, Boisvert could reject the mail because the contents of the envelope, a two-inch thick stack of paper, was too voluminous to be searched by mailroom staff.[4] Under MDOC policy, Boisvert could consider such mail to be prohibited because it posed a threat to the security, good order or discipline of the correctional facility under MDOC Policy Directive 05.03.118 ¶ MM. These prison policies are reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89; *Harbin–Bey*, 420 F.3d at 578. The MDOC has a legitimate interest in ensuring that incoming mail is fully searched before it is released to a prisoner. *See Thornburgh*, 490 U.S. at 413 (observing that in the

---

[4] The Court notes that a two-inch thick legal document is no small matter. For example, a two-inch thick administrative transcript in the Court's possession consists of 482 pages. The court can well understand the burden a prison mailroom would face if prisoners routinely received two-inch thick stacks of papers and the potential dangers they might conceal.

15

volatile prison environment, it is essential that prison officials be given broad discretion to prevent disorder caused by incoming mail which could circulate throughout the prison population).

Based on this record, the Court should defer to the expertise of the MDOC in addressing security concerns related to incoming mail. The fact that Boisvert relied on an undisclosed MDOC memo from 2008 in making this determination does not alter the Court's decision. "The Supreme Court has often reminded that courts are ill-suited to the inordinately difficult task of running a prison, and in general should defer to the expert judgment of prison officials." *Sheets v. Moore*, 97 F.3d 164, 169 (6th Cir. 1996). Boisvert's rejection of the envelope addressed to plaintiff did not violate plaintiff's First Amendment rights. Indeed, this rejection was not an all-or-nothing proposition. Plaintiff had more than ample opportunity – months – to return the package to its sender and to have it re-mailed to him, for e.g., in multiple smaller parcels. Accordingly, Boisvert is entitled to summary judgment on plaintiff's First Amendment claim alleging interference with his mail.

### 2. Access to the courts

Plaintiff's amended complaint also alleged the defendant Boisvert engaged in "obstruction of justice" when she rejected his mail. The Court will construe this allegation as a claim that Boisvert impeded plaintiff's access to the courts. In his affidavit opposing defendants' motion, plaintiff makes a passing reference to this claim stating that on October 25, 2012, "he asked for a rehearing to substantiate that he was not breaking any policy, but that Boisvert was withholding his 6.500 motion hence impeding his access to the courts." Hurick Aff.

"Prisoners have a First and Fourteenth Amendment right of access to the courts. In assessing whether a State has violated that right, we ask whether the claimant has demonstrated an

"actual injury," and, if so, whether the claimant has alleged that more than mere negligence by the state actor caused the injury." *Sims v. Landrum*, 170 Fed. Appx. 954, 956 (6th Cir. 2006) (internal citations omitted). Here, there is no allegation or evidence that plaintiff suffered an actual injury from the rejection of his mail on May 22, 2012. Accordingly, defendant Boisvert is entitled to summary judgment on plaintiff's claim that she impeded his access to the courts.

### D. Plaintiff's other federal claims against defendant Boisvert

Plaintiff also alleged that defendants violated six federal criminal statutes, specifically, 18 U.S.C. §§ 241, 242, 1505, 1512, 1702, 2071. The Court previously ruled that plaintiff could not sue defendants Berghuis, Jones, Baily and Minnerick for alleged violations of these federal criminal statutes. *See* Opinion at p. 10. Similarly, plaintiff cannot sue defendant Boisvert on these criminal statutes. Accordingly, the Court should dismiss these other federal claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1997e(c)(1)

### E. Plaintiff's state law claims against defendant Boisvert

The remainder of plaintiff's claims against defendant Boisvert arise from unspecified violations of state laws, including MDOC policies. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendant, however, requires the court to re-examine the issue of supplemental jurisdiction. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the

17

court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claims against defendant Boisvert. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss all of the remaining state law claims asserted against defendant Boisvert.

**IV.     Recommendation**

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 27) be **GRANTED** as to all claims alleged against defendants Harris and Verboncouer, and as to the First Amendment claims alleged against defendant Boisvert.

I further recommend that plaintiff's claims alleged against defendant Boisvert which are based upon federal criminal statutes be **DISMISSED** *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c).

I further recommend that plaintiff's state law claims alleged against defendant Boisvert be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this action be **TERMINATED**.

Dated:  February 11, 2014	/s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).